IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| RICHARD ALAN PALMER,<br><br>      Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | CASE NO. 1:25-cv-1963<br><br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

Plaintiff Richard Palmer filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 7. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural history**

In July 2023, Palmer filed an application for supplemental security income, alleging a disability onset date of May 31, 2023.[1] Tr. 231. In his application, Palmer claimed disability due to severe back and joint pain, sciatic nerve impairments and nerve damage, shoulder and elbow arthritis, swollen

---

[1]   "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

feet, and hand and foot numbness. Tr. 269. The Social Security Administration denied Palmer's application and his motion for reconsideration. Tr. 103, 111. Palmer then requested a hearing before an Administrative Law Judge (ALJ). Tr. 138.

In August 2024, an ALJ held a hearing, during which Palmer and a vocational expert testified. Tr. 34–65. The next month, the ALJ issued a written decision finding that Palmer was not disabled. Tr. 17–28. The ALJ's decision became final on July 18, 2025, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Palmer filed this action on September 16, 2025. Doc. 1. He asserts the following assignments of error:

> 1. The ALJ did not properly find that this case doesn't present a "borderline age situation" where the exact same RFC and vocational factors, except for Plaintiff's age change five months after the hearing, require that he be found disabled pursuant to SSA's grid rules.
>
> 2. The ALJ's RFC does not reasonably find that Plaintiff can perform the standing/walking requirements of light jobs (i.e., standing and walking most of the day, or about 6 hours per 8-hour day) despite his severe impairments of spinal disorders and extremely morbid obesity.

Doc. 9, at 1.

2

**Evidence**

*Personal and vocational evidence*

Palmer was 53 years old on the date he filed his disability application. Tr. 27. His "last level of education" was eleventh grade. Tr. 42. He last worked in 2012, Tr. 45, but he has no past relevant work,[2] Tr. 47.

*Relevant medical evidence*

In March 2022, Palmer saw his primary care doctor, Jerry Bell, DO, for pain management. Tr. 537. Palmer reported lower back pain for over a year. Tr. 537. He described his pain as "sharp" at times while walking, bending, lifting, and rising from a seated position. Tr. 537. Dr. Bell described Palmer as morbidly obese, with a Body Mass Index (BMI) of 66.27.[3] Tr. 538. Dr. Bell did not note any other abnormal exam findings. Tr. 538.

In July 2022, Palmer saw Dorothy Bradford, MD, for a consultative exam at the Social Security Agency's request. Tr. 333–39. On strength testing, Palmer scored a four-out-of-five on cervical flexion, extension, and lateral flexion to the right side; right shoulder flexion, extension, abduction, adduction, and internal and external rotation; and left-hand grip strength. Tr.

---

[2]     "Past relevant work is work that [the claimant] ha[s] done within the past five years that was substantial gainful activity and that lasted long enough … to learn to do it." 20 C.F.R. § 404.1560.

[3]     BMI is a measure of body fat based on height and weight. A BMI of 30 and above indicates obesity. *See* National Institute of Health, Calculate Your Body Mass Index, available at http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.html (last visited April 8, 2026).

3

333–34. Palmer scored a five-out-of-five on all remaining areas, including his lower extremities. Tr. 333–34. Dr. Bradford described Palmer's gait as normal, even, and regular, but noted that he relied on a walker for support. Tr. 334, 339. She assessed Palmer with severe morbid obesity (BMI of 67), hypertension without end organ damage, and degenerative disc disease of the lumbar spine without radiculopathy. Tr. 339. Dr. Bradford recommended that Palmer undergo a cervical spine x-ray, and she did not assess functional limitations. Tr. 339. Cervical spine x-rays taken in September showed mild-to-moderate cervical spondylosis. Tr. 513–14.

In December 2022, Palmer returned to Dr. Bell for "pain shots" and medication for neck and right-side pain. Tr. 346. Dr. Bell administered a Toradol injection and refilled Palmer's Gabapentin prescription. Tr. 347.

In January 2023, Palmer had an annual wellness exam with Dr. Bell. Tr. 700.  Palmer complained of his hand and wrist "going numb." Tr. 700. In March, Palmer followed up with a pain management doctor for neck pain. Tr. 356. He told the doctor that Dr. Bell had prescribed "a small amount of Norco" which "helped tremendously." Tr. 356. The doctor noted that Palmer was "on Prednisone chronically for elbow pain and appear[ed] to get regular [injections of] DepoMedrol and Toradol" for his chronic lower back pain. Tr. 356. The doctor again recommended physical therapy, noting that he had referred Palmer to physical therapy in the past. Tr. 358. He also commented that he believed that Palmer's pain and spinal problems were "accelerated" by his

4

morbid obesity and counseled Palmer to lose weight, but Palmer disagreed that his weight caused issues and was resistant to changing his diet and losing weight. Tr. 358.

In August 2023, Palmer went to the emergency room complaining of pain in his left leg that was worse with walking. Tr. 1046. On exam, he had full lower extremity strength and no swelling. Tr. 1047. Imaging showed deep vein thrombosis in Palmer's left leg. Tr. 484, 1048. The doctor diagnosed Palmer with hypertension and obesity and prescribed an anti-coagulant. Tr. 1048.

In September 2023, Dr. Bell completed an opinion form on Palmer's behalf. Tr. 398–400. Dr. Bell opined that Palmer would miss more than five days of work per month, be off-task more than 25 percent of an eight-hour workday, and need more than 45 minutes of unscheduled break-time. Tr. 398. Palmer could sit for six to eight hours, and sit, stand, and walk for less than one hour at a time. Tr. 399. He would need to shift between sitting, standing, and walking every five to ten minutes at-will and, in an "optimal" setting, he should elevate his legs above knee level while sitting. Tr. 399. Palmer could never lift 20 or more pounds and could occasionally lift up to 10 pounds. Tr. 399. He could occasionally handle, finger, and reach, and could never stoop, kneel or crouch. Tr. 399. Palmer also needed to use a walker and a cane. Tr. 399–400.

In October 2023, Palmer arrived by ambulance at the emergency room complaining of lower back pain radiating to his right leg. Tr. 1025. On exam, Palmer exhibited intact motor strength in his legs with no sensory deficits. Tr. 1027. He had "generalized tenderness" in his lumbar region with "maximal tenderness in the right lumbar paraspinal musculature." Tr. 1027. He had no flank tenderness or tenderness in his midline cervical or thoracic spine. Tr. 1027. The doctor diagnosed acute exacerbation of chronic low back pain and administered intravenous medication (Dilaudid, Decadron, and Toradol). Tr. 1027. Palmer showed marked improvement: he walked, transferred himself from a wheelchair to a chair, and put his socks and shoes on. Tr. 1027. Lumbar spine x-rays were taken, which the doctor described as "show[ing] some degenerative changes but no acute fracture or spondylolisthesis. Tr. 475, 1027.

In December 2023, Palmer returned to Dr. Bell for back and leg pain. Tr. 412. Other than obesity, Dr. Bell didn't indicate any abnormal musculoskeletal exam findings. Tr. 413.

In February 2024, Palmer arrived by ambulance at the emergency room for foot pain that began three days before his visit. Tr. 1017. The pain had worsened, and on the day of his visit Palmer said that he could no longer put weight on his foot. Tr. 1018. His right foot was swollen, reddened, and tender, but he had full lower extremity strength and intact sensation. Tr. 1019. The doctor diagnosed foot cellulitis, provided morphine for pain, and prescribed

6

antibiotics. Tr. 1019. He advised Palmer to follow up with his doctor if symptoms persisted or worsened. Tr. 1019.

A week later, Palmer attended a psychological consultative exam. Tr. 1007–13. The psychologist commented that Palmer "walked hunched over" and used a walker, "presented with hand tremors, and … with difficulty breathing when he engaged in any type of movement." Tr. 1010.

In July 2024, Palmer saw Dr. Bell for an annual physical exam. Tr. 1082. Dr. Bell didn't note any abnormal musculoskeletal findings on examination. Tr. 1083. Palmer's BMI was 75.81. Tr. 1082.

*State agency opinions*[4]

In September 2023, Gilberto Munoz, MD, reviewed Palmer's record. Tr. 104–07. Regarding Palmer's residual functional capacity (RFC),[5] Dr. Munoz found that Palmer could sit, stand, and walk for about six hours in an eight-hour workday. Tr. 107. He could lift and carry 20 pounds occasionally and 10

---

[4]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[5]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

pounds frequently. Tr. 107. Palmer could frequently climb ramps and stairs but could never climb ladders, ropes, or scaffolds. Tr. 108. He would need to avoid even moderate exposure to work hazards. Tr. 108.

In February 2024, Kathy Horava, DO, reviewed Palmer's record, including Dr. Bell's September 2023 opinion, and adopted Dr. Munoz's findings. Tr. 114–18. Dr. Horava explained that Dr. Bell's opinion was less persuasive because it "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Tr. 115. She also noted that the "opinion contrasts with other evidence in the record" and that it was "without substantial support from the medical source who made it." Tr. 115.

*Hearing testimony*

Palmer, who was represented by counsel, testified at the administrative hearing held in August 2024. When asked why he was unable to work, Palmer cited knee pain. Tr. 48. He could hardly stand on his left knee and he couldn't walk "too great." Tr. 48. He also had back pain, sciatica, blood clots, hand numbness, and foot swelling. Tr. 48–49. Palmer had tried physical therapy for his back, but it bothered him too much and he couldn't do it. Tr. 50. He said that his back pain made it hard to move quickly, and that sometimes meant that he didn't make it to the bathroom in time. Tr. 49, 52.

Palmer said that his condition is worsening. Tr. 48. He has been to the hospital several times, but because he only has Medicaid, the generic

8

medication they give him doesn't "work hardly" and there isn't much they can do for him. Tr. 48. He does some household chores, like cooking, laundry, and vacuuming his bedroom. Tr. 53–54. He gets his groceries delivered. Tr. 53–54. Palmer has two-to-three bad days a week where the pain will not go away. Tr. 58.

The ALJ asked the vocational expert to determine whether a hypothetical individual with Palmer's age, education, and work experience could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 62. The vocational expert answered that such an individual could perform the following jobs: sorter; packer; and cleaner, housekeeper. Tr. 62–63.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since July 5, 2023, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: disorders of the skeletal spine; other and unspecified arthropathies; and obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

9

416.967(b) except frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasional[ly] be exposed to hazards, such as unprotected heights.

5. The claimant has no past relevant work (20 CFR 416.965).

6.   The claimant was … 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 5, 2023, the date the application was filed (20 CFR 416.920(g)).

Tr. 20–28.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The

11

claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1.     The ALJ did not err when evaluating Palmer's borderline age situation*

Palmer argues that the ALJ "did not properly find that this case doesn't present a 'borderline age situation' where the exact same RFC and vocational factors, except for Plaintiff's age change five months after the hearing, require that he be found disabled pursuant to SSA's grid rules." Doc. 9, at 7. Palmer's argument fails for a number of reasons.

Generally, a claimant's age in a disability case means his or her "chronological age." 20 C.F.R. §§ 404.1563(a); 416.963(a).[6] Age factors into a claimant's ability to perform work and is broken down into three categories: a "younger person (under age 50)"; a "[p]erson closely approaching advanced age … (age 50–54)"; and a "[p]erson of advanced age … (age 55 or older)." 20 C.F.R.

---

[6]     The regulations governing disability insurance benefits and social security income are the same. *See* 20 C.F.R. § 404.1501 *et seq*.; 20 C.F.R. § 416.901 *et seq*.; *see generally Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). For convenience, I cite these regulations interchangeably.

§ 404.1563(c)–(e). These categories, however, are not applied "mechanically" in "borderline situations"—situations in which a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination … that [the claimant] [is] disabled." 20 C.F.R. § 404.1563(b). In *borderline situations*, the ALJ "will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." *Id.*

Here, the ALJ noted that Palmer was "53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed." Tr. 27. Palmer asserts that he "changed age categories to 'advanced age' (age 55-59) five months after the ALJ's decision in this case."[7] Doc. 9, at 7. The ALJ recognized this fact and explained:

> Although a borderline age situation exists because the claimant is within a few days to a few months of attaining the next higher age category and use of the higher age category would result in a finding of "disabled" instead of "not disabled," use of this age category is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work. The claimant does not have mental functional limitations and there are insufficient adversities in the evidence of record to justify a non-mechanical application of the grid rules. The record does not support use of the higher age category.

---

7    POMS DI 25015.006(B) explains that "a few months" means "a period not to exceed six months." DI 25015.006(B), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425015006;    [https://perma.cc/M8FW-CZF3].

14

Tr. 27. So the ALJ followed the regulations requiring her to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." 20 C.F.R. § 404.1563(b). Indeed, as the Sixth Circuit has counseled about section 404.1563(b):

> [a]lthough ALJs are obligated by this text not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations.

*Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008), *as amended* (Nov. 11, 2008); *see Pruitt v. Comm'r of Soc. Sec.*, No. 1:16-cv-2927, 2018 WL 1468584, at *8 (N.D. Ohio Mar. 26, 2018).

Palmer takes issue with the ALJ's finding that "there are not any 'vocational adversities' which justify application of the higher age category." Doc. 9, at 7. In support of his argument, he cites "POMS DI 25015.006(E)," without providing an explanation for what POMS is or providing a citation to it. *Id.* at 8. He also describes two examples in "POMS DI 25015.006(E)" as "enlightening" and alleges that the ALJ was obligated to follow these examples to find Palmer disabled. *Id.*

POMS, which stands for "Program Operations Manual System," "is a policy and procedure manual that employees of the Department of Health &

15

Human Services"—now the Social Security Administration—"use in evaluating Social Security claims." *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). "[I]t does not have the force and effect of law," but "it is nevertheless persuasive." *Id.* The fact that POMS is not binding on this court dooms Palmer's argument from the start.

Even if POMS were binding on this court, Palmer hasn't shown that the ALJ failed to comply with it. He alleges that the two examples he cites in POMS DI 25015.006(E) involve a claimant "just like [him]." Doc. 7, at 9. But these examples do not involve a claimant *just like* Palmer. The first example Palmer describes involves a claimant "three months shy of the age change with unskilled medium work experience and a limited education." *Id.* (citing DI 25015.006(E), *Example 1*). But the individual described in *Example 1* had a "fifth-grade education," DI 25015.006(E), *Example 1*, whereas Palmer has an eleventh-grade education.[8] This matters because the POMS instructs that in *Example 1*, the ALJ "considers the claimant's education to be more vocationally adverse because the claimant has an education at the lower end of the rule continuum." DI 25015.006(E), *Example 1*. So *Example 1* doesn't help Palmer.

---

[8]     The POMS provides a table for "how the claimant's education relates to the range of education criteria for the higher age category rule," *see* DI 25015.006(E)(1)(b)  [https://perma.cc/M8FW-CZF3], which Palmer doesn't address. The Commissioner explains that Palmer's eleventh-grade education is "at the higher end of the 'limited or less' education continuum," Doc. 11, at 10 (citing POMS DI 25015.006(E)(1)(b)).

Palmer describes the individual in *Example 2* as "a claimant several months shy of the age change with a light RFC, limited education and no transferable skills." Doc. 9, at 8. He claims that *Example 2* "was a situation which justified applying the higher age category." *Id*. But the POMS in *Example 2* describes an "illiterate" claimant who can perform sedentary work. DI 25015.006(E), *Example 2*. Palmer does not claim that he is illiterate and the ALJ found that he could perform light work. Moreover, *Example 2* doesn't take a position on whether a higher age category is justified or not in that instance. Rather it simply warns that the ALJ must consider "factors other than illiteracy," since the "medical-vocational rule" for the higher age category "already considers illiteracy." *Id*. *Example 2* doesn't help Palmer, either.

Further, neither example commands the ALJ to make a finding one way or another—the examples merely counsel the ALJ on what to "consider." *Id*. So even if the individuals described in Examples 1 and 2 were just like Palmer, which they are not, the ALJ wasn't obligated to use the higher age category. And while Palmer contends that the fact that he has no past relevant work experience supports his assertion that the ALJ should have used the higher age category in his case, Doc. 9, at 7, Doc. 12, at 2, he hasn't explained why.[9]

---

[9]    The court in *Bowie* wrote:

    although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence. For example,

Palmer has not shown that the ALJ erred when she found that the record didn't support using the higher age category.

*2.    Palmer has not shown that the ALJ's RFC finding is unsupported by substantial evidence*

Palmer challenges the ALJ's RFC finding that Palmer can stand and walk for about six hours in a workday. Doc. 9, at 1, 13. In doing so, he objects to the ALJ's evaluation of the opinion evidence. *Id.* at 13–15.

Palmer argues that in her decision, the ALJ summarized the evidence in the record but made "no attempt to connect" it to her RFC finding. Doc. 9, at 14. But the ALJ adopted the RFC that the state agency reviewers assessed,[10] Tr. 21, 25, and explained why she did so:

> substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the "younger individual" age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry. *See* Rule 201.18, App. 2 to Subpart P of 20 C.F.R. § 404; HALLEX II–5–3–2. In that situation, the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold.

539 F.3d at 400–01. Here, unlike in *Bowie*, the ALJ provided an explanation. Tr. 27. And even taking into account the fact that Palmer has no past relevant work, the vocational information for the individual described above in the dicta in *Bowie* was a closer call than Palmer in all other respects (one month before an age change, limited to sedentary work, and "barely literate"). 539 F.3d at 400–01. As noted, Palmer doesn't rely on any legal authority other than the two POMS examples to support his assertion that the ALJ erred.

[10]    The state agency reviewers opined that Palmer must "avoid even moderate exposure" to hazards, Tr. 117, which on its face is consistent with the ALJ's RFC finding that Palmer could have "occasional" exposure to hazards, Tr. 21. Palmer has not alleged otherwise.

18

> I find these opinions persuasive because they are supported by, and consistent with, the more complete medical record. As noted above, aside from some findings as to spinal tenderness (C8F/11) and reliance on an ambulatory device (C1F/2; C7F/4), the claimant's physical examination findings were generally unremarkable throughout the record (C6F/11, 136; C9F/3). For example, his gait was even and regular (C1F/7). The claimant had no sensory deficits in his lower extremities and his motor strength was intact (C8F/11). He also had 5/5 strength (C8F/3, 31) and range of motion in both lower extremities (C1F/4; C8F/3, 31). These examination findings are consistent with limiting the claimant to light exertion, with additional climbing and environmental limitations. For these reasons, and based on this evidence, I find these opinions persuasive.

Tr. 25. So the ALJ "connect[ed]" her RFC finding to her summary of the record evidence. Moreover, the state agency opinions provide substantial evidence for the ALJ's decision. *See Kurman v. Kijakazi*, No. 1:20-cv-1837, 2022 WL 1067568, at *7 (N.D. Ohio Jan. 13, 2022) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision") (collecting cases), *report and recommendation adopted,* 2022 WL 765072 (N.D. Ohio Mar. 14, 2022).

Palmer complains that the ALJ cited "certain normal test results regarding strength and sensory findings" and then stated, "in conclusory fashion," that they were consistent with light work. Doc. 9, at 13. It's not clear what Palmer's complaint is. The ALJ cited specific evidence, including generally normal exam findings and a normal gait, to support her finding that Palmer could perform light work. Tr. 25, 26. Palmer hasn't shown that this was

19

improper. *See, e.g., Giering v. Comm'r of Soc. Sec.*, No. 20-12353, 2022 U.S. Dist. LEXIS 124246, at *4 (E.D. Mich. July 13, 2022) (rejecting the claimant's argument that the ALJ didn't make clear why she rejected a doctor's opinion that was inconsistent with light work because the ALJ cited the claimant's unremarkable exam findings and a normal gait). Palmer hasn't challenged the ALJ's characterization of the record evidence or any other aspect of the ALJ's evaluation of the state agency reviewers' opinions.

Next, Palmer argues that the ALJ "failed to perform the complete analysis required by § 416.920c" because, Palmer claims, the ALJ "fail[ed] to evaluate the equally/similarly persuasive opinions of the State Agency vis-à-vis Dr. Bell considering the most persuasive factors outlined in §[4]16.920c(c)." Doc. 9, at 15. Palmer explains that this regulation "explicitly anticipate[s] that situations will occur where medical opinions disagree where both are reasonably supported in the record, and in such cases the ALJ must then consider the second step analysis … to break the tie between otherwise supported, but not in agreement, opinions." *Id.*

The regulation Palmer claims that the ALJ violated is 20 C.F.R. § 416.920c(b)(3), which states:

> Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same, we will articulate how we considered the other most persuasive factors in

20

> paragraphs (c)(3) through (c)(5) of this section for
> those medical opinions or prior administrative
> medical findings in your determination or decision.

20 C.F.R. § 416.920c(b)(3). This regulation makes clear that to trigger the obligation to articulate the "other … factors," the ALJ must find that two or more opinions are different and "both [are] equally well-supported … and consistent with the record." *Id.*

Here, the ALJ found that Dr. Bell's opinion was "not supported by, or consistent with, the more complete medical record," Tr. 26, and that the state agency reviewers' opinions were "supported by, and consistent with, the more complete medical record," Tr. 25. Because the ALJ did not find the opinions of Dr. Bell and the state agency reviewers to be "equally well-supported … and consistent" with the record, section 416.920c(b)(3) did not trigger an obligation to articulate the other factors.

Finally, Palmer says that the ALJ didn't explain how Palmer's allegations of symptoms were not consistent with the evidence because, Palmer asserts, the ALJ found that "abnormal [exam] findings [we]re outweighed (without explanation) by certain normal findings related to strength and sensory findings." Doc. 9, at 13. It's not clear whether Palmer intends to challenge the ALJ's evaluation of his symptoms, since the structure of his brief only identifies the ALJ's evaluation of opinion evidence and he doesn't appear to allege an error with respect to the ALJ's symptoms evaluation. *See id.* at 13–

21

15. Even assuming, without deciding, that Palmer presented a challenge to the ALJ's evaluation of his allegations, any such claim would fail.

The ALJ recounted Palmer's allegations that knee and foot pain prevented him from standing and that he had difficulty walking, lifting, and holding objects. Tr. 22. The ALJ commented that Palmer occasionally cooked, did laundry, and maintained his self-care. Tr. 22. The ALJ recited Palmer's generally unremarkable diagnostic evidence, Tr. 23 (unremarkable lumbar spine and knee x-rays and imaging showing mild-to-moderate cervical spondylosis); his treatment, Tr. 23 (noting that spinal injections alleviated Palmer's pain); and the fact that Palmer at times used a walker, Tr. 23. The ALJ cited Palmer's generally unremarkable exam findings, including a normal gait, full strength ("5/5") in his lower extremities, full grip strength in his right hand and "4/5" grip strength in his left hand, and "4/5" strength with neck and shoulder maneuvers. Tr. 24. The ALJ explained that while Palmer "has been observed using an ambulatory device," "the record does not contain a prescription for it" and the medical evidence did not establish that an assistive device was medically necessary. Tr. 24. The ALJ concluded that Palmer's alleged limitations were not consistent with his "reported daily functioning," "exam[] findings of record, and the persuasive portions of the medical opinions." Tr. 24. In short, the ALJ explained why he discounted Palmer's allegations of limitations. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529.

All told, Palmer hasn't shown that the ALJ's RFC was unsupported by substantial evidence or that the ALJ erred.

**Conclusion**

For the reasons explained above, I affirm the Commissioner's decision.

Dated: April 8, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge